Jones, J.
The defendant is engaged in coal mining operations upon plaintiff’s lands, under the provisions of certain leases executed by plaintiff to defendant’s assignors. In this action plaintiff seeks for an accounting of coal mined from and transported through her premises, asks that statements thereof be furnished her by defendant; and that she be permitted to enter the mines for the purpose of ascertaining whether the covenants of said leases had been broken; she also seeks an injunction restraining *490 the use of her houses except as incidental to the operations upon her own land, and seeks a similar relief preventing unworkmanlike operation of the mines thereon. She asks that an account may be taken of damage done to the mines because of improper and unworkmanlike mining.
The plaintiff also asks the direction of the court as to the construction of said leases, (original and supplemental) ; that the court define the duties of defendant thereunder, and decree specific performance of the covenants of such leases in accordance with the construction and findings of the court; that the court order the defendant to operate the mines on plaintiff’s lands, during the terms of such lease, in a workmanlike manner and in accordance with the stipulations contained therein.
It appears from the petition that, on December 27, 1892, the plaintiff leased her lands to the Athens Coal Co., of West Virginia for the term of thirty years. Under the terms of that lease, the lessee agreed to operate a mine or mines thereon in a. workmanlike manner and to pay a royalty of seven (7) cent» per ton upon all merchantable lump coal mined during said term. The lessor was to have the right, at all reasonable times, of inspecting the books of lessee, and she also reserved the right of entering the mines and premises of lessee for the purpose of ascertaining whether the lessee was performing the covenants of lease. The lessee covenanted to mine and remove from plaintiff’s premises, not less than seventy-five (75) tons of coal, ■on an average, for each working week day, during each year of the term, and to pay royalty for such amount whether mined or not; the lessee, however, had the privilege of making up, in the following year, the loss sustained by payment of royalty on unmined coal during a previous year. Houses, constructed on the premises, were to be used only by the lessee, its miners employes and agents, as incidental to the business of lessee, and we're not to be rented to other parties.
On March 19, 1894, having taken possession of the leased premises, the Athens Coal Co., of West Virginia transferred and assigned its lease, for the residue of the term, to the Athens Coal Co., an Ohio corporation, which took possession under the terms thereof. On May 24, 1896, a supplemental lease was executed by plaintiff to this latter company. In this supplemental *491 lease, after reciting that it might become profitable and necessary for the company to use plaintiff’s lands and underground' entries for the purpose of transporting coal from other lands purchased by the lessee, through entries under plaintiff’s lands, this use of underground ways was demised to the lessee as fully as theretofore enjoyed in mining and transporting coal from the original demised lands. In consideration of this right, the lessee agreed that, so long as it used the plaintiff’s lands so burdened, it would mine and remove one hundred and fifty (150) tons each working day during each year, instead of seventy-five (75) tons as provided in the original lease, and that t-he lessee would pay one cent per ton of lump coal, on all c al transported though plaintiff’s premises from adjoining territory. It was also provided that the lessee should be liable for any damages arising from negligent operations• of lessee; that plaintiff’s lands should be mined by lessee to the fullest extent it could mine the same at a reasonable profit to itself and find a market therefor at profitable prices; and that plaintiff’s lands should be given preference, by lessee, over other lands that might be mined by it.
The petition alleges that, on Febuáry 12, 1898, 'the last above named lessee assigned said lease and supplemental lease and all its interest in the demised premises, to the defendant, for the residue of the term; that such assignment was subject to the terms and covenants contained in said leases, and that defendant agreed to perform all of the covenants thereof and to pay the royalty and rents stipulated in said leases. • Plaintiff charges defendant with numerous covenant violations of the foregoing leases, to-wit; that it failed to account for coal mined and for royalty due; that it has denied her inspection of the books and premises for the purpose of ascertaining how much coal has been mined from plaintiff’s lands and from adjoining territory ; .that lessee is not working the mines in a workmanlike manner, but has operated them unproperly and unskillfuíly and has been guilty of mismanagement and waste, in permitting the roof to fall in, allowing entries to become filled with water, abandoning entries and blocks of coal which should not have been abandoned, leaving pillars standing which should have been removed. Plaintiff also charges a failure to mine the amount *492 of coal the lessee was required to mine under the leases, and that the lessee did not give preference to lessor’s lands, but charges-lessee with giving preference to lands and mines adjoining plaintiff’s premises. The petition also charges a violation of the lease, in that defendant is permitting the use and occupation of buildings upon plaintiff’s lands, in the interest and for the benefit of lands other than plaintiff’s.
The answer in effect, denies the allegations in the petition.. It admits the execution and assignment of the leases. It alleges it took possession under the assignment on July I, 1898, and that, if it has failed to mine the coal as stipulated in the-lease, it was by reason of the faulty and bad condition of the-coal and- roof over it, which coal could not be mined at a reasonable profit and at a reasonable expense. This the reply controverts.
At the conclusion of the planitiff’s evidence, the defendant moved to arrest the evidence from the consideration of the court and for judgment in its behalf; it further moved, if the foregoing motion should be overruled, to arrest, from the consideration of the court, all of the evidence relating to all matters excepting the accounting for royalties and hauling from-adjacent lands.
The evidence submitted on behalf of plaintiff has been offered, largely, in the attempt to make a case of specific performance. It would have been better for the parties concerned, if the legal questions arising here could have been disposed of before the evidence had been submitted. However,, having the case befóte us upon the facts proven by plaintiff, and the legal propositions arising being still unsettled, this court has concluded that it will overrule the defendant’s motions, but will take the case for the present, on the evidence of plaintiff, for the purpose of indicating what it thinks to be the law in point. So that, without considering whether defendant may desire to introduce its evidence later, we at this time declare what we think to be the law affecting this case, and will indicate the character of the relief that should be granted, on the showing made by plaintiff’s evidence.
Counsel for plaintiff, at the close of their evidence, make the claim that ah important allegation in the petition has not been *493 denied. It appears that two successive lessees operated the mines on plaintiff’s premises before the lease was assigned to defendant. Plaintiff’s counsel contended that the petition ■alleges that the defendant covenanted and obligated itself to make good the defaults of defendant’s assignor’s.- Conceding that the petition, which is somewhat equivocal in that respect, does make such averments as plaintiff’s counsel claim, it appears that the allegation is controverted in the answer by a denial of the allegation “in the manner and form as therein alleged.” This denial is in the nature of a negative pregnant, and is a bad form of pleading. However the attack ■should have been made before the submission of the case upon ■evidence. Plaintiff, having failed to attack this form of pleading by motion, but on the contrary having offered her evi-dence, cannot after such submission, object to the form of the answer.
II. Prior to the possession and operation of the mines by the defendant, they had been worked by defendant’s assignor The Athens Coal Co. of Ohio, and by its predecessor, The Athens Coal Co., of West Virginia. There L evidence in this case tending to prove that many of the covenants of lease had been broken by these latter companies prior to the time the defendant took possession, to-wit: on July x, 1898. I may say that it is almost impossible to ascertain how many and to what extent these covenants of lease were broken prior to July 1, 1898. The evidence is very vague and indefinite upon that point.. The plaintiff’s claim is that the defendant, in the assignment of lease, assumed and agreed to pay the royalty and rents that defendant’s predecessors in title had agreed to pay, but which they had defaulted. Practically that is the charge in the petition, if we construe it most favorably for the plaintiff in this case.
If such a covenant were made — if there were an express stipulation on the part of the Luhrig Coal Co. made by it for a ■consideration, the defendant would be liable. But we do not. find that the plaintiff has established anything of that character. The deed assigning the interest of defendant’s assignor to defendant, is in evidence, and there is nothing contained therein showing that defendant assumed or agreed to be responsible for *494 the defaults of its predecessors in demise. It is true that persons , who acquire title to land, are bound by any covenants therein running with the land, bd<t this proposition cannot apply here. Here the breach of covenants and defaults committed by others were complete before defendant acquired possession and title. And the defendant, not having expressly agreed to, cannot be held responsible for royalties, unworkmanlike mining or other defaults committed by others prior to defendant’s possession in July, 1898. For such covenants as it may have broken since that date, the defendant is liable.
3. More fully argued by counsel, was the legal proposition, whether this court can properly decree specific performance in a case of this character. Can this court require the defendant to perform specifically all of the covenants it agreed to perform in the original and supplemental leases? Evidence was offered by plaintiff tending to prove that the Euhrig Coal Company had been violating some of the convenants in the lease; that waste had been committed in the operation of the mines, and that the mines had not been operated in a workmanlike manner.
Whether a court could decree a specific performance and enforce mining contracts between lessor and lessee where the latter violates continuing covenants involving peculiar skill or discretion in their performance, it is not necessary for the purposes of this case, to express any opinion thereupon. Jn this case, for all of the breaches of the lessees, if such have been committed, the lessor has an adequate remedy at law. Having such, she cannot have specific performance. Indeed, the parties to the leases have provided therein, for a method by which the lessor may obtain damages. The supplemental lease provides for a liquidated sum to be paid lessor in case of failure to mine a minimum quantity specified in the lease. The parties, in the supplemental lease, have provided, in terms, for any damages sustained by lessor from negligent operations in the exercise of its rights thereunder by the lessee. We think an action at law could be maintained and a complete and adequate remedy be had therein. We therefore refuse an order for specific performance or for an accounting in this form of action for damages that may have been sustained by negligent operations of the mines upon plaintiff's lands.
*495 4. That which has given the court more trouble than any other question arising in the case, was the construction of the supplemental lease relating to the amount of coal that should have been mined from plaintiff’s premises; and whether, in any event, the defendant was bound to mine therefrom more lump tonnage than from adjacent lands upon which it was operating, during the same period of time. By the terms of the original lease, the lessee agreed to mine an average of seventy-five (75) tons of lump coal during each working day of the year; whether mined or not, it was bound to pay seven cents royalty on that amount, with the privilege reserved in the lessee of making up the deficiency in a succeeding year. The supplemental lease, in that respect, was similar in terms, but one hundred and fifty (150) tons was substituted therein, as the daily average, in lieu of the seventy-five (75) tons provided for in the original. However, the supplemental lease contained a clause to the effect that plaintiff’s lands should be given preference by the lessee over other lands that might be mined by lessee through entries or shafts on plaintiff’s lands. In the construction of these leases, shall the lessee be held to have performed its duty thereunder by mining or paying for the stipulated minimum, or is it required, when mining from adjacent territory, to give preference in tonnage quantity to plaintiff’s lands over such adjacent territory. If the court should construe this to mean that an equal or larger amount of tonnage should be taken, under the provisions of this lease, from plaintiff’s territory than from adjoining lands, then of course, account should bé taken from July 1, 1898, perhaps up to the date of decree, for all such tonnage failed to be mined from plaintiff’s land, equivalent to that taken out of such lands adjacent.
The chief purpose of the supplemental lease was to provide lessee with the use of plaintiff’s premises, shaft and underground entries, in order to reach coal lands adjacent thereto for minng purposes. Whenever lessee relinquished this right, the supplemental lease became void by its terms, and the original lease again became operative in all- its terms. The consideration for the supplemental lease and for the right of using plaintiff’s lands to transport coal mined from adjacent premises, was that, during the enjoyment of such use, the lessee *496 agreed to pay one cent per ton of lump coal removed through her lands from such adjoining premises, and. should also mine ®n a daily average of one hundred and fifty (150) tons of lump «oal each year, or pay seven cents per ton royalty on that amount, whether mined or unmined. The original lease remains intact, except as modified by the supplemental.
We are unable to give the word “preference,” contained in the supplemental lease, the force and meaning claimed for it by counsel for plaintiff. The term is so vague and so irreconcilable with other definite express terms of the lease, that to give it the force claimed it would render inoperative, other unambiguous terms. To hold that lessee was bound by the word “preference,” to mine more from plaintiff’s lands than from other adjacent lands, would have the effect of reading out of the leases, various clauses showing an apparent otherwise intention. The supplemental lease definitely fixes the amount that lessee shall mine on the plaintiff’s lands, and provides a fixed amount of payment upon failure to do so. The same instrument fails tó specifiy what amount must be taken from other lands — fails to specify how little or how much lessee must mine. It merely stipulates that lessee shall pay one cent per ton on all coal mined and hauled from adjoining lands. On the other hand, it is expressly definite as to what it shall do upon the lands of Dorcas Allison. In the supplemental lease, also, is a clause providing that the plaintiff’s lands should be mined by lessee, “to the fullest extent that said company can mine the same at a reasonable profit to itself and find a market therefor at profitable pHice.” This clause, as well as the minimum royalty clause, is wholly inconsistent with the contention claimed — that more coal must be mined from plaintiff’s lands than from adjacent premises.
It seems to me that the parties to the lease have stipulated therein for an amount in the nature of liquidated damages in this regard. Dor coal taken from other lands, one cent'per ton was to be paid for the use of plaintiff’s shaft entries, etc.— for failure to mine one hundred and fifty (150) tons each working day from plaintiff’s lands, lessee was to pay a stipulated amount monthly.
Novi what definite meaning can this court give to the clause, "plaintiff’s lands shall be given preference by said company *497 over other lands that may be reached and mined by said company?” What preference? How much preference? Preference as to time or amount ? The lessee has still a term of more than twenty years in which to mine this coal. Shall the preference be exercised each working day, or would it be sufficient to equalize tonnage monthly or yearly? Shall preference be given limited in extent to the daily average tonnage of one hundred and fifty (150) tons, or shall it be held to mean that, at all times, a larger tonnage must be removed from one than from the other ? This court has concluded, and we hold, that this particular clause is so vague, uncertain, and so irreconcilable with other terms of the lease, that we have been unable to give it effect.
Burch & Johnson, W. B. Peters, and Grosvenor, Jones & Worst ell, for Plaintiff in Error.
Lazvrence T. Weal, and L. W. Jewett, for Defendant in Error.
As to the relief asked, we find from testimony introduced by plaintiff that she is entitled to an inspection of the lessee’s books touching the amount of coal mined from her lands, or hauled through her premises; and also to a decree enjoining the use of houses upon her lands for purposes other than stipulated in the lease. For any damages sustained by her for waste or for the negligent working of mines she has a remedy at law, and the parties have stipulated that lessee shall be liable in damages therefor. The plaintiff’s testimony fairly proved the commission of waste, but not to the 'extent claimed by her.. From the testimony a portion of the coal and pillars may still be reclaimed. The plaintiff is entitled in addition to the relief specified, to an accounting as to the amount of royalties due under the leases, irrespective of damage, for -vaste, and to an accounting for any amount that may be due her for transporting coal through her premises from adjacent lands.
Upon the further trial of the case, the questions of ventilation and accounting aforesaid will be the only matters considered.